**DOCKETED**

APR 5 - 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED-ED4
APR - 4 PM 12: 14

U.S. CLERK
DISTRICT COURT

Julia Nash on behalf of
herself and all others similarly situated,          )
                                                     )
          Plaintiff,                                 )
                                                     )       No. 01C 2336
     v.                                              )
                                                     )
                                                     )
KELLOGG CO., INC., GARST SEED                        )       JUDGE COAR
COMPANY, and AVENTIS CROPSCIENCE                     )       MAGISTRATE JUDGE LEVIN
USA HOLDING, INC.,                                   )
                                                     )
          Defendants.                                )

## CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of all others similarly situated, complains as follows:

### Nature of Action

1.     This case is a class action by purchasers of corn flour products including but not limited to Morningstar Farms veggie Corn Dogs and Mini Corn Dogs against Kellogg Co, Inc., Garst Seed Company (Garst), and Aventis CropScience USA Holding, Inc. ("Aventis") arising from the defendants' participation in the production of corn products, and foodstuffs that wrongfully contained a genetically engineered corn marketed by biotechnology company Aventis under the name of StarLink including but not limited to Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs. StarLink corn's genetic modification enables the corn to produce its own pesticide that contains a potentially harmful protein known as Cry9C.

2.     Defendants knowingly or recklessly participated in the supply, production, advertising, marketing and selling of corn seed and corn products including Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs and other corn flour and foodstuffs containing StarLink and which plaintiff and the class members unknowingly purchased and ingested. The Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs are manufactured and sold by Morningstar Farms division of Kellogg Co.



## Jurisdiction

3.  This Court has personal jurisdiction over this litigation under 28 U.S.C. §1332 as the parties are diverse and this action seeks in excess of $75,000.00.

4.  This Court has subject matter jurisdiction over Count III in this action under 28 U.S.C. 1331 because it arises from a contract to which the federal Environmental Protection Agency is a party, and contracts with the federal government are governed by federal law.

5.  Plaintiff is a citizen and resident of the State of Illinois, County of Cook.

## The Parties

6.  Plaintiff Julia Nash ("Nash"), purchased for personal and household consumption ten or more packages of Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs between June, 2000 and February, 2001. Some of these corn dogs contained Starlink corn.

7.  Defendant Kellogg Co., Inc. is a Delaware corporation headquartered in Battle Creek MI engaged in the manufacture and distribution of consumer food products for global distribution and sale.

8.  Morningstar Farms®, Loma Linda®, and Natural Touch® are Brand names under which Kellogg markets its meatless products.

9.  Defendant Aventis CropScience USA Holding, Inc. is a Delaware corporation headquartered in Research Triangle Park, North Carolina. Aventis, either alone or in conjunction with its corporate family relations, developed StarLink corn and holds the intellectual property rights for StarLink corn. Aventis is a subsidiary of Aventis SA of France. Aventis SA and its Aventis CropScience organization is the largest crop science company in the world with pro forma sales exceeding $4 billion.

10.  Defendant Garst Seed Company is a Delaware corporation headquartered in Slater, Iowa. Garst produces and produced the StarLink corn seeds, which it sold to farmers directly or through dealer-agents, under a licensing agreement it entered into with Aventis. Garst is the largest seller of StarLink corn seeds to farmers in the United States.

-2-

## **Factual Allegations**

11.     Upon the petition of Aventis, on April 10, 1998, the Environmental Protection Agency ("EPA") established a temporary tolerance exemption from the requirement of a tolerance for residues of the plant pesticide *Bacillus thuringgiensis* subspecies *tolworthi* Cry9C protein and the genetic material necessary for its production in corn feed use only; as well as in meat, poultry, milk or eggs resulting from animals fed such feed. 63 Fed.Reg. 17687. This temporary tolerance was made permanent on May 22, 1998. 63 Fed.Reg. 28258.

12.     On August 17, 1998, the EPA followed this tolerance exemption action by approving the pesticide product registration of StarLink corn utilizing the Cry9C protein. 63 Fed.Reg. 43936. This registration was recently extended through September 30, 2001. 65 Fed.Reg. 48701. Under these actions, StarLink corn is legally allowed to be marketed, planted and introduced into interstate commerce for use in non-human animal feed only.

13.     On April 7, 1999, Aventis re-submitted a petition to the EPA seeking an exemption from the requirement of a tolerance residues of Cry9C on all raw agricultural commodities. To date, the EPA has not approved this petition. Based upon concerns with Cry9C protein from StarLink, the EPA has embarked a regulatory process to assess the potential allergenicity issues related to use of Cry9C in food directed for human consumption. 64 Fed.Reg. 71452 (announcing assessment of Cry9C's allergenicity and the use of a Scientific Advisory Panel to further analyze the matter). An EPA assessment has found that the Cry9C protein is unique among *b.t.* proteins because it is heat stable and resistant to degradation in gastric juice (not readily digestible) and that these are the best available criteria known as to characteristics of proteins that are food allergens. Thus, consumption of foods containing Cry9C can harm certain individuals resulting in, *inter alia*, gastrointestinal upset.

14.     Because of the concerns raised by both the EPA and its Scientific Advisory Panel, the EPA has yet to approve Cry9C for use in other than non-human animal feed. These limitations in Cry9C use were recognized by Aventis during its February 29, 2000 presentation to the EPA Scientific Advisory Panel when the company admitted that the product should not be presently reaching

consumers.

15.    Despite the fact that the EPA has not approved StarLink corn and Cry9C for incorporation or use in food intended for human consumption, on September 18, 2000, Friends of the Earth and Genetically Engineered Food Alert (an association of public interest organizations which support the removal of genetically engineered food ingredients from consumer foods unless they are adequately safety tested and labeled) announced that a 7-box sample of Taco Bell taco shells sold in a suburban grocery store showed the presence of StarLink corn. Friends of the Earth gave the taco shell samples to an independent laboratory, which concluded that the samples contained at least 1 percent of StarLink corn.

16.    On September 22, 2000, Kraft announced that it was voluntarily recalling all Taco Bell Home Original taco shell products sold nationwide in retail grocery outlets. Kraft made the decision to recall the Taco Bell taco shells after its own tests confirmed the presence of StarLink and Cry9C in the taco shells.

17.    On October 2, 2000, the federal Food and Drug Administration officially recalled the Taco Bell taco shells. The Agency declared a class II recall, defined as "a situation in which the use of, or exposure to, a violative product may cause temporary or medically reversible adverse health effects."

18.    On October 12, 2000, Friends of the Earth and Genetically Engineered Food Alert announced that samples of Safeway, Inc. brand taco shells were also found, by an independent testing entity, to contain StarLink corn. This finding was confirmed by Safeway, Inc., the nation's largest supermarket chain, which thereafter recalled its house brand taco shells made by Mission Foods, a sister company of Azteca Milling, L.P. Mission Foods also makes the house brand taco shells for Food Lion, Inc. and Shaw's Supermarkets, Inc. Both Food Lion, Inc. and Shaw's Supermarkets, Inc. have pulled their house brand taco shells off the shelf.

19.    On or about October 25, 2000, Friends of the Earth and Genetically Engineered Food Alert announced that samples of Western Family brand taco shells purchased from a grocery store in

-4-

Eugene, Oregon were also found, by an independent testing entity, to contain StarLink corn. Western family sells its grocery products to stores in 23 states and Russia and Japan. Western Family has recalled its Western Family brand taco shells and Shur Fine brand tortilla chips.

20.     On or about October 25, 2000, in Japan, which ranks as one of the biggest buyers of United States corn, a consumer group announced that it found StarLink in a food product called "Homemade Baking." The product is now being voluntarily recalled.

21.     By mandate of the EPA, and pursuant to an agreement between Aventis and the EPA, Aventis was obligated to require farmers who bought or licenced StarLink corn seeds to segregate StarLink corn from other types of corn that are approved for human consumption. Under the terms of that agreement, Aventis agreed to take responsibility for keeping StarLink out of the human food supply. Aventis promised to tell growers of StarLink that it could not be sold for human consumption, and to have growers sign a "Grower Agreement" to that effect. Aventis also promised the EPA that StarLink seeds would come with a "Growers Guide" repeating the restrictions, including the need for a 660-foot buffer strip between StarLink and any other corn varieties. Lastly, Aventis promised that growers who bought the seed would also receive two letters of reminder about the restrictions (at planting and harvest times), and that Aventis would conduct a post-harvest survey to ensure rules were followed. *Pittsburgh Post-Gazette*, December 4, 2000. However, despite this contractual requirement, "[w]hat was found, according to industry officials, is that not all farmers had signed required contracts [with Aventis] obligating them to follow certain procedures intended to keep StarLink out of the food supply." *Chicago Tribune*, October 15, 2000.

22.     According to the *Des Moines Register*, "[g]overnment officials have said Aventis was supposed to ensure that farmers kept StarLink corn separate from other varieties but failed to do so." *Des Moines Register*, October 18, 2000. "A spokesman said Iowa Attorney General Tom Miller's office had received about a dozen calls from StarLink growers. 'Most tell us they were not told about the restriction,' said Miller aide Bob Brammer." *Des Moines Register*, October 25, 2000.

23.     Also, "[f]or the [segregation] plan to work, information about StarLink would be passed from

Aventis to the seed companies; then the seed companies would communicate it to its dealers, who in turn tell farmers who bought StarLink." *Pittsburgh Post-Gazette*, December 4, 2000. Thus, under the terms of the licensing agreement between Aventis and Garst, Garst was required to inform its dealers and growers of StarLink corn seeds of the segregation requirements. However, Garst did not always convey the segregation restrictions to its dealers and growers. According to the *New York Times*:

> Randy Kohorst, a 43-year old corn and soybean farmer in Arcadia, Iowa, says he planted 200 acres of StarLink. But he says he was told nothing by the Garst Seed Company of Slater, Iowa, which sold him the seed, about buffer zones or marketing restrictions.

*New York Times*, December 11, 2000. Similarly, the *Des Moines Register* reported:

> Butler County farmer Jim Norton says he received no special warnings last spring when he purchased seed for StarLink . . . he was never told to segregate StarLink from other corn, and it now appears that many other farmers were not told either . . . Norton said he thought StarLink could be grown and sold like any other corn. A tag on the seed bags seemed to say so, Norton said. It says: "You are licensed upon purchase of this product only to produce forage or grain for food, feed or grain processing" . . . Jim Erikson, the dealer who sold the seed to Norton, said he didn't recall receiving any information about restrictions. He said the seed bags bore nothing that he considered to be a warning label.

*Des Moines Register*, October 25, 2000.

24.     According to a representative of the Iowa Attorney General's office, "a few farmers who grew StarLink were told by seed dealers not to worry about the restrictions, that EPA was on the verge of approving StarLink for human consumption. By the time they harvested their crop there would be no reason to separate StarLink." *Pittsburgh Post-Gazette*, December 4, 2000. Other news accounts have similarly reported that "warnings were accompanied by a wink and a nudge, together with advice to the effect that 'government hasn't approved it for human use yet, but this is just red tape and it will be OK by harvest time.'" *Saint Paul Pioneer Press*, December 3, 2000.

25.     The presence of Cry9C protein in a food intended for human consumption in interstate commerce is a violation of the federal Food, Drug and Cosmetic Act. Under 21 U.S.C. Sec. 346a(a)(1), when a pesticide residue tolerance or an exemption from such a tolerance has not been granted for a residue, any food intended for human consumption with such a pesticide residue is

unsafe, and therefore adultered under 21 U.S.C. Sec. 342(a)(2)(B). The existing tolerance exemption for Cry9C found in StarLink corn applies only to products used or intended for non-human animal feed. Thus, under 21 U.S.C. Sec. 346(a)(1) and 21 U.S.C. Sec. 342(a)(2)(B), the presence of Cry9C in Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs and other foodstuffs render such products adultered under the federal Food, Drug and Cosmetic Act. Pursuant to 21 U.S.C. Sec. 331(a), the introduction of an adultered food into interstate commerce is an illegal act.

26.    Aventis intentionally, knowingly, recklessly or negligently failed to ensure, as required by the EPA, that farmers to whom it supplied StarLink corn seeds contractually obligated themselves to follow certain procedures intended to keep StarLink corn out of the human food supply. Aventis knew or should have known that without such contractual obligations by farmers of StarLink corn, it was likely and foreseeable that StarLink corn would or could be commingled with corn approved or fit for human consumption, and that StarLink corn would and could find its way into foodstuffs intended for human consumption.

27.    Garst intentionally, knowingly, recklessly or negligently failed to adequately communicate to its dealers and farmers of StarLink corn seeds (as required by the EPA and under the terms of Garst's licensing agreement with Aventis) the segregation requirements for StarLink corn. Garst knew or should have known that without adequately communicating the segregation requirements for StarLink corn to its dealers and growers, it was likely and foreseeable that StarLink corn would or could be commingled with corn approved or fit for human consumption, and that StarLink corn would and could find its way into foodstuffs intended for human consumption.

28.    The subject corn flour products including but not limited to Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs were sold with content descriptions that mislabeled their contents, i.e., failed to disclose that the products contained StarLink corn and the protein Cry9C which is specifically not approved for human consumption by federal regulatory authorities.

**Class Allegations**

29.    Plaintiff bring this litigation as a class action under Rule 23(a) and 23(b)(1), 23(b)(2) and

23(b)(3), on behalf of the following classes of persons and other entities nationwide: all persons who purchased products for human consumption that contain Aventis' StarLink corn including, but not limited to Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs.

30.     Excluded from the class are defendants and their officers and directors.

31.     <u>Numerosity</u>: The class is so numerous that joinder of all members is impracticable. Millions of packages of corn flour products are sold nationwide each year to consumers who may rely upon the purity of their contents and truthfulness of their descriptions. In addition, millions of pounds of StarLink corn have been grown in the United States and a currently unknown but likely vast amount of such corn has found its way into the human food supply.

32.     <u>Commonality</u>: Questions of law or fact exist arising from defendants' conduct. Such questions are common to all class members and predominate over any questions affecting only individual members of the class. The myriad of questions of law or fact common to the class includes, *inter alia*:

    (a)     whether defendants omitted, misrepresented or otherwise falsely stated material facts,

    (b)     whether defendants sold corn, corn flour or corn products containing Starlink for human consumption,

    (c)     whether the class members have been damaged and, if so, what is the proper measure of damages,

    (d)     whether defendants have violated state laws barring, warranty breach or contract breach,

    (e)     whether defendants have violated the Magnuson-Moss Warranty Act,

    (f)     whether the class members are entitled to injunctive and/or declaratory relief, and the scope of such relief,

    (g)     whether Aventis breached its contract with the federal Environmental Protection Agency and, if so, whether Aventis caused injury and damages to members of the class who are third party beneficiaries to that contract,

33.     <u>Typicality</u>: The claims or defenses of the representative parties are typical of the claims or defenses of the members of the class.

34.     <u>Adequacy of representation:</u>  Plaintiffs will fairly and adequately protect and pursue the

-8-

interests of the members of the class. Plaintiffs understand the nature of the claims herein, their role in these proceedings, and will vigorously represent the interests of the class. Plaintiffs' counsel has vast experience in nationwide consumer class cases and is highly qualified to pursue this litigation for the class.

35.   The class action is maintainable: This action is appropriate for class status because:

   (1)   the prosecution of separate actions by or against individual members of the class would create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants,

   (2)   defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, and

   (3)   questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. This class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. The corn and corn flour based foodstuffs such as Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs generally sell for a few dollars each. Thus, the size of the expected recovery for an individual class member is not expected to be substantial enough for any one class member to incur the costs and expenses of this litigation. There are no foreseeable difficulties likely to be encountered in the management of a class action.

## Count I

### (Uniform Commercial Code Breach of Warranty - Against Kellogg and Morningstar)

36.   Plaintiff adopts and realleges paragraphs 1 through 35.

37.    The subject Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs and other foodstuffs' presentation and packaging and affirmative statements of product contents constituted an express warranty.

38.    At all relevant times there was in full force and effect the Illinois Uniform Commercial Code, 810 ILCS 5/1-101, *et seq.* (the "UCC").

39.    Section 2-313 of the UCC (815 ILCS 5/2-313) provides, in pertinent part:

§2-313. Express Warranties by Affirmation, Promise, Description, Sample.

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample of model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty.

40.    Similar statutes, identical in their material respects, are in effect in most other jurisdictions within the United States.

41.    Plaintiffs and the class members have been damaged by defendants' breach of their express warranty obligations.

## Count II
### (Uniform Commercial Code Nonconformity of Goods - Against Kellogg and Morningstar)

42.    Plaintiff adopts and realleges paragraphs 1 through 35.

43.    Section 2-301 of the UCC provides that the seller is obligated to transfer and deliver the contracted goods in accordance with the contract.    According to the UCC's Official Comments under §2-301, in order 'to determine what is in 'accordance with the contract' under this Article

-10-

usage of trade, course of dealing and performance, and the general background of circumstances must be given due consideration in conjunction with the lay meaning of the words used to define the scope of the conditions and duties." 810 ILCS 5/2-301, *Official Comments*.

44.     "Contract" is defined under UCC § 1-201(11) as the total legal obligation which results from the parties' agreement as affected by the UCC and other applicable rules of law. 810 ILCS 5/1-301.

45.     "Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing and usage of trade or course of performance as provided in the UCC. 810 ILCS 5/1-201(3).

46.     Under the conditions that plaintiffs and the members of the class purchased their Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs and other foodstuffs as set forth herein, the general background and implication from the circumstances was (and continues to be) that the Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs and other foodstuffs only contained corn flour that was fit for human consumption and legally approved for sale to humans for their consumption.

47.     Defendants failed to sell plaintiffs and members of the class Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs and other foodstuffs containing corn flour fit for human consumption and legally approved for sale to humans for their consumption and thus defendants failed to transfer or deliver conforming goods as required by the UCC.

48.     Defendants' breach proximately caused damage to plaintiffs and the class.

### Count III
### (Breach of Contract to Third Party Beneficiary - Against Aventis)

49.     Plaintiff adopts and realleges paragraphs 1 through 35.

50.     Upon information and belief, Aventis, as a necessary condition for the EPA granting its temporary tolerance exemption for StarLink corn and Cry9C, entered into a contractual agreement with the EPA (for adequate consideration) that required Aventis to contractually require farmers who bought or licensed StarLink corn to employ certain specified procedural safeguards to ensure that StarLink corn was segregated from other types of corn that were approved and intended for human consumption.

-11-

51.     It was the intent of both Aventis and the EPA upon entering into that contract that it was for the primary and direct benefit, protection, health and welfare of plaintiffs, and all others similarly situated, who comprise the population of United States consumers of foodstuffs containing corn and corn flour.

52.     Aventis breached its contract with the EPA by failing to contractually require all farmers of its StarLink corn to employ certain specified procedural safeguards to ensure that StarLink corn was segregated from other types of corn that were approved and intended for human consumption.

53.     Plaintiffs and members of the class were proximately damaged by Aventis' breach of contract in that they purchased foodstuffs intended for human consumption that contained StarLink corn.

### Count IV

### (Breach of Contract to Third Party Beneficiary - Against Garst)

54.     Plaintiff adopts and realleges paragraphs 1 through 35.

55.     Upon information and belief, Garst entered into a contractual licensing agreement with Aventis (for adequate consideration, and upon Garst's acceptance of Aventis' contract offer) that required Garst to, *inter alia*, adequately inform dealers and growers to whom it sold or licensed StarLink corn seeds of the above segregation requirements and specified procedural safeguards to ensure that StarLink corn was not commingled with other types of corn that were approved and intended for human consumption.

56.     It was the intent of both Garst and Aventis upon entering into that contractual licensing agreement that the segregation requirements were for the primary and direct benefit, protection, health and welfare of plaintiffs, and all others similarly situated, who comprise the population of United States consumers of foodstuffs containing corn and corn flour.

57.     Garst breached its contractual licensing agreement with Aventis by failing to adequately inform dealers and growers to whom it sold or licensed StarLink corn seeds of the above segregation requirements and specified procedural safeguards to ensure that StarLink corn was not commingled with other types of corn that were approved and intended for human consumption.

-12-

58.     Plaintiffs and members of the class were proximately damaged by Garst's breach of contract in that they purchased foodstuffs intended for human consumption that contained StarLink corn.

## Count V

### (Uniform Commercial Code Breach of Implied Warranty Against All Defendants)

59.     Plaintiff adopts and realleges paragraphs 1 through 35.

60.     The sale of the subject corn products including the Morningstar Farms® veggie Corn Dogs and Mini Corn Dogs implied that they were as represented, merchantable as food, were fit for their ordinary purposes (i.e., that they were fit for human consumption and contained food material approved for sale to consumers) and that they conformed to the promises or affirmations thereon.

61.     Section 2-314 of the UCC (810 ILCS 5/2-314) provides, in pertinent part:

> §2-314. Implied Warranty: Merchantability; Usage of Trade. (1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as
>
> (a) pass without objection in the trade under the contract description; and
>
> (b) in the case of fungible goods, are of fair average quality within the description; and
>
> (c) are fit for the ordinary purposes for which such goods are used; and
>
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.
>
> (3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

62.     Similar statutes, identical in their material respects, are in effect in most other jurisdictions within the United States.

63.     Plaintiffs and the class members have been damaged by defendants' breach of their implied warranty obligations.


## Count VI
### (Magnuson-Moss Warranty Act -Against All Defendants)

64.     Plaintiff adopts and realleges paragraphs 1-41 and 59-63.

65.     The Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to comply with an implied warranty arising under state law.  *See* 15 USCA § 2310 (d)(1)(A)(1976).

66.     Defendants breached the implied warranty of merchantability by selling goods which were not merchantable.

67.     Plaintiff paid more that $5.00 for the unmerchantable Morningstar Farms veggie Corn Dogs and Mini Corn Dogs.

68.     Plaintiff and Plaintiff's Class have been damaged and have suffered direct economic loss in that they purchased products which violated the warranties applicable thereto.


## Prayer for Relief

WHEREFORE, plaintiffs and the class pray for the following relief:

A.     an order certifying the class as set forth herein, with the named plaintiffs as class representatives and their counsel as class counsel;

B.     a declaration that defendants' conduct violated the law as alleged in each cause of action;

C.     judgment for plaintiffs and the class for compensatory damages sustained as a result of defendants' unlawful conduct;

D.     creating a fluid recovery fund to compensate the public for purchases of the

products containing Starlink;

     E.     an order requiring defendants to disgorge all revenues they have made from their

illegal conduct; and

     F.     awarding plaintiffs and the class attorneys' fees and costs against defendants as

allowed by law; and

     G.     granting such other or further relief as the Court may hold appropriate under the

circumstances.


DATED:     March 26, 2001

                                          Plaintiff's attorney

Aron D. Robinson
LAW OFFICE OF ARON D. ROBINSON
19 South LaSalle Street
Suite 1300
Chicago, Illinois 60603
312 / 857 - 9050

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Julia Nash

**DEFENDANTS**
Kellogg Co., Inc.
Garst Seed Co.
Aventis Cropscience USA Holding Inc.

DOCKET
APR 5 2001

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Aron D. Robinson
19 S. LaSalle, Suite 1300
Chicago, IL 60603

ATTORNEYS (IF KNOWN)

# 01C 2336

**JUDGE COAR**    MAGISTRATE JUDGE LEVIN

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) all
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury – Med. Malpractice<br>☐ 365 Personal Injury – Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS – Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☒ 890 Other Statutory Actions |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is a multi count complaint raising causes of action under the U.C.C. Magnuson Moss, 15 U.S.C. 2310, and 28 U.S.C. 1332. Count III raises a Federal Question. The complaint concerns the sale of food products containing Starlink corn

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

**VIII. This case**
☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE 3/26/01

SIGNATURE OF ATTORNEY OF RECORD _____

UNITED STATES DISTRICT COURT

DOCKL

DOCKETED

APR 5 - 2001

APR 5 - 2001

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of    Nash v. Kellogg Co., Inc, Garst Seed Co., and Aventis Cropscience Holdings, Inc.

Case Number: **01 C 2336**

JUDGE COAR

MAGISTRATE JUDGE LEVIN

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff, Julia Nash

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME <br> Aron D. Robinson | NAME |
| FIRM <br> Law Office of Aron D. Robinson | FIRM |
| STREET ADDRESS <br> 19 S. LaSalle Suite 1300 | STREET ADDRESS |
| CITY/STATE/ZIP <br> Chicago IL 60603 | CITY/STATE/ZIP |
| TELEPHONE NUMBER <br> 312 857-9050 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) <br> Illinois 06195059 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☒ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☒   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☐ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☐   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**